## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

DONOVAN JOHNSON,

     Plaintiff,

v.

TOWN OF ARLINGTON, STEVEN CONROY, individually and in his official and supervisory capacities as an officer for the Arlington Police Department, BRENDAN FLYNN, individually and in his official and supervisory capacities as an officer for the Arlington Police Department, and STEPHEN PORCIELLO, individually and in his official and supervisory capacities as an officer for the Arlington Police Department

     Defendants.

Civil Action No. 1:22-cv-11242

## **COMPLAINT**

1.     Shortly after sunset on February 10, 2021, Donovan Johnson, a 20-year-old Black man, walked on the sidewalk along Route 16 in Somerville, Massachusetts. Mr. Johnson had just left work at Mass General Brigham where he served as a Grants Administrator, and stopped briefly at CVS. He was minutes from his home, his apartment complex visible a short distance away, when Defendant Steven Conroy, a white police officer for the Arlington Police Department ("APD"), ran up to him and yelled "get the fuck on the floor."

2.     That evening, Defendant Conroy and other officers of the APD wrongfully stopped, searched, arrested, and assaulted Mr. Johnson with no legitimate basis for their conduct. In doing so, APD officers violated Mr. Johnson's constitutional rights.

3.     At the time of the unlawful encounter with Mr. Johnson, APD officers were in pursuit of a white male suspect known to the APD for prior criminal acts. Mr. Johnson, a Black

man, did not fit the suspect description in even the most remote sense, and there was no evidence of his involvement in any crime. Nevertheless, APD unlawfully violated Mr. Johnson's rights.

4.      By this civil action, Plaintiff Donovan Johnson seeks redress for violations of his rights under the Fourth and Fourteenth Amendments of the U.S. Constitution pursuant to 42 U.S.C. § 1983; for civil rights conspiracy pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3); for Mr. Johnson's detention and subsequent mistreatment by Defendants pursuant to M.G.L. ch. 12, §§ 11H-I; and for assault and battery by Defendants.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 over the federal claims concerning violations of the Fourth and Fourteenth Amendments and 42 U.S.C. § 1985(3).  This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 over the related claims under state law.

6.      Venue is proper in this judicial district under 28 U.S.C. § 1391 because the events giving rise to this civil action occurred in this judicial district.

7.      This Court has personal jurisdiction over Defendant Town of Arlington, a municipality within the Commonwealth of Massachusetts, and over all individual Defendants because they reside in the Commonwealth of Massachusetts and they are employed by the Town of Arlington.

## PARTIES

8.      Plaintiff Donovan Johnson is a Black man who resides in Somerville, Massachusetts.

9.      Defendant Town of Arlington is a municipality duly organized and existing under the laws of the Commonwealth of Massachusetts.

10. Defendant Steven Conroy is an employee of the Town of Arlington and serves as an APD police officer. At all relevant times, Defendant Conroy acted as an agent, servant, and employee of the Town of Arlington. This action asserts claims against Defendant Conroy in his official and individual capacities.

11. Defendant Brendan Flynn is an employee of the Town of Arlington and serves as an APD police officer. At all relevant times, Defendant Flynn acted as an agent, servant, and employee of the Town of Arlington. This action asserts claims against Defendant Flynn in his official and individual capacities.

12. Defendant Stephen Porciello is an employee of the Town of Arlington and serves as an APD sergeant. At all relevant times, he acted as an agent, servant, and employee of the Town of Arlington. This action asserts claims against Defendant Porciello in his official, and individual capacities.

## FACTUAL ALLEGATIONS

**APD is Called to Homewood Suites to Investigate Suspicious Activity by a White Man.**

13. On February 2021 at approximately 6:30 p.m., Mathew Harrison, the general manager of the Homewood Suites Hotel (the "Hotel") located at 1 Massachusetts Avenue in Arlington, Massachusetts, called the APD regarding Kyle T. ("Mr. T"), a white man known to the APD for prior criminal activity.

14. Earlier that day, the front desk clerk at the Hotel checked in a female guest, who requested that the clerk add Mr. T's name to her room so that he could have a key. Mr. T's name was familiar to the front desk clerk, so he checked the list of names the Hotel maintains for people not allowed to access the Hotel. Mr. T's name was on the no-access list in connection with a theft of two televisions.

15.     Later that day, while walking down the hallway of guestrooms, the front desk clerk observed an individual he believed to be Mr. T enter Room 131. The front desk clerk then called Mr. Harrison to report his suspicion.

16.     Mr. Harrison called APD's main switchboard and told the switchboard operator that he had previously called the APD to report the theft of two televisions from a guestroom rented by Mr. T.  Mr. Harrison reported that he believed Mr. T was back in the Hotel in a room that was registered under a woman's name.

17.     Mr. Harrison also told the APD switchboard operator that the officers who investigated the television theft found condoms and drug paraphernalia in Mr. T's room, and they thought that the room might have been used in connection with human trafficking.

18.     Mr. Harrison requested that the APD send an officer over to the Hotel to determine if Mr. T was at the Hotel.

**The APD Dispatches Defendant Conroy, Defendant Porciello, and Officer Kelly to the Hotel.**

19.     The APD dispatched Defendant Conroy, Defendant Porciello, and Officer Kelly to the Hotel in response to Mr. Harrison's request.  After arriving at the Hotel, the officers spoke with the Hotel staff to get more information about the situation.

20.     The front desk clerk told the officers that he believed Mr. T was in Room 131 with two women, and that these three individuals were the only ones he had seen enter the room. Defendant Conroy showed the front desk clerk a photograph of Mr. T, which clearly identified him as a white man, and the front desk clerk confirmed that the man he saw in the Hotel looked like the man in the photograph.

21.     Defendant Conroy approached the door to Room 131 and covered the peephole. He knocked on the door, and then heard muffled conversation and a noise that he believed to be someone opening the window to the room.

**Defendants Conroy and Officer Kelly Search for Mr. T.**

22.     Believing that someone might be attempting to exit the room via the window, Defendant Conroy and Officer Kelly ran out of the front entrance to the Hotel, while Defendant Porciello remained in the hallway outside Room 131.

23.     The window in Room 131 faces the east side of the Hotel, and the front entrance of the Hotel opens to the west.  Defendant Conroy ran from the front of the Hotel building towards the area the window faces.  Once there, Defendant Conroy saw an open window with the window treatment blowing in the wind.  However, he did not see anyone in the area of the open window.

24.     According to the police report, Defendant Conroy saw footprints in the snow that he believed belonged to someone who fled from the window of Room 131 heading towards Alewife Brook/Somerville.  Defendant Conroy immediately started running towards Cross Street in the direction that he believed the person was fleeing.

25.     Cross Street crosses over the Alewife Brook and intersects with Route 16.  Alewife Brook serves as a natural border between the towns of Arlington and Somerville.

26.     On or about the bridge on Cross Street, Defendant Conroy observed someone ahead wearing a red jacket and black pants jogging on the Route 16 sidewalk towards Broadway Street. The person in the red jacket and black pants was Mr. T.

**Defendants Accost Mr. Johnson, and Not Mr. T.**

27.     After leaving work at Mass General Brigham that same evening, Plaintiff Johnson visited the CVS located at 23 Massachusetts Avenue in Arlington, Massachusetts. After making

a purchase, he began walking towards his home located on Broadway Street in Somerville, Massachusetts. As he was walking home, a white man jogged past him. Mr. Johnson did not know the man and had not seen him before this incident.

28.     As Defendant Conroy ran onto Route 16 and started catching up to Mr. T, he now saw two people; Plaintiff Johnson and Mr. T. Mr. T was approximately five or six paces past Mr. Johnson.  Defendant Conroy then yelled to both the Mr. T and Mr. Johnson to "get the fuck on the floor." Mr. T dropped to his knees, but Mr. Johnson, unaware of what was happening, remained standing and turned to face Defendant Conroy.

29.     There was no basis for Defendant Conroy stopping Mr. Johnson. The suspect description was of a white man, and Defendant Conroy had been pursuing a man wearing a red jacket and black pants that appeared to be running from the area of the hotel. This did not match Mr. Johnson. Furthermore, Mr. T was known to the APD for prior criminal activity, and Defendant Conroy had a photograph of Mr. T that he had used to confirm his identity with the hotel desk clerk. Finally, nothing in the investigation indicated that there was more than one male suspect involved, as the hotel desk clerk only noted seeing two women and one man at the Hotel.

30.     Mr. Johnson, confused and afraid, asked Defendant Conroy, "what is going on?" Defendant Conroy threatened Mr. Johnson to turn around. Still unaware as to why Defendant Conroy was yelling at him, Mr. Johnson froze in place.  Defendant Conroy then drew his gun, pointed it at Mr. Johnson and yelled, "turn the fuck around!" Mr. Johnson immediately raised his arms and asked Defendant Conroy "What did I do?"  Defendant Conroy forcibly grabbed Mr. Johnson's right arm and pulled it down to his lower back.

31.     Mr. Johnson told Defendant Conroy, "I didn't do anything."  Defendant Conroy repeatedly yelled, "stop resisting" and used a takedown maneuver to throw Mr. Johnson to the

snow-covered concrete, face first.  Defendant Conroy then placed his knee on Mr. Johnson's neck, pinning him to the ground.  Several times, Mr. Johnson yelled, "I can't breathe!"  Defendant Conroy, however, continued to pin Mr. Johnson to the ground with his knee.

32.    Meanwhile, Mr. T – the white man who fit the suspect description, who had been identified as the suspect in a photograph shown by Defendant Conroy, and who Defendant Conroy knew had a criminal history and an outstanding warrant – was left unattended.

33.    Officer Kelly arrived at the scene as Defendant Conroy grabbed Mr. Johnson. Officer Kelly exited his cruiser, immediately recognized Mr. T, and secured him in handcuffs.

34.    Mr. T immediately told Officer Kelly that he did not know Mr. Johnson.  Officer Kelly did not relay this information to Defendant Conroy or come to Mr. Johnson's aid.  Officer Kelly instead stood by and watched as Defendant Conroy accosted Mr. Johnson.

35.    As Defendant Conroy held Mr. Johnson down, Defendant Flynn arrived on the scene and immediately jumped on Mr. Johnson to help Defendant Conroy pin Mr. Johnson down. Defendant Conroy held Mr. Johnson's legs while Defendant Flynn forced Mr. Johnson's arms towards Defendant Conroy.  Defendant Conroy then proceeded to handcuff Mr. Johnson and pull him to a standing position.

36.    As the Defendants unlawfully detained Mr. Johnson, two women, concerned about the Defendants' conduct, pulled their car over to the shoulder of busy Route 16 and began filming the encounter.

37.    Mr. Johnson repeatedly told the officers that he was not involved in whatever they were investigating and pleaded with them to be released.  The officers did not release Mr. Johnson. Instead, Defendant Flynn walked over to Mr. Johnson, pulled down his facemask, and coercing Mr. Johnson to silence him by jamming his finger and the facemask in Mr. Johnson's mouth.

38.     Concerned for his well-being after the Defendants refused to release him, Mr. Johnson yelled out his mother's phone number to the women filming the encounter and asked them to continue recording the Defendants.

39.     At no point did the Defendants inform Mr. Johnson of his *Miranda* rights.

**The Defendants Ignored All the Information Indicating that Mr. Johnson Was Not Involved in the Hotel Incident.**

40.     Throughout the encounter, Plaintiff Johnson repeatedly told the Defendants that he did not know Mr. T, and Mr. T confirmed that he did not know Mr. Johnson.  The Defendants ignored this information.

41.     Mr. Johnson told the Defendants that he was just walking home and had no idea why they had stopped him.  Mr. Johnson told the Defendants that he lived in the apartments just across Route 16.  The apartments were in plain view of the Defendants.

42.     The Defendants examined Mr. Johnson's ID, which confirmed that he lived in the apartments across from where the Defendants had pinned him to the ground and forcibly handcuffed him.

43.     The front desk clerk had informed the Defendants that only one man was seen in Room 131: someone matching the description of Mr. T.  By the time he arrived to the scene of Mr. Johnson's unlawful detention, Defendant Porciello had already interviewed the other occupants of Room 131. There was no information indicating that a Black man, or indeed any man other than Mr. T, was in Room 131.

44.     The Defendants ignored all these facts.  They had no reason to believe that Mr. Johnson had any connection with their investigation, yet they continued to violate Mr. Johnson's rights.

45.     Despite having no information connecting Mr. Johnson to the Hotel incident, one of the officers approached the women filming the unlawful arrest and said that Mr. Johnson was involved in a human trafficking incident.

46.     Thankfully, the concerned women were not persuaded by the Defendants' manufactured reasons for detaining Mr. Johnson and continued to film the unlawful arrest.  The women also called Mr. Johnson's mother.

**The Defendants Unlawfully Search and Arrest Mr. Johnson Without Probable Cause.**

47.     Despite having no information connecting Mr. Johnson with the Hotel incident and ignoring the fact that they had arrested Mr. Johnson within the city limits of Somerville–outside their jurisdiction, the Defendants intimidated Mr. Johnson for the purpose of conducting an unlawful search of Mr. Johnson's pockets.  The Defendants engaged in an aggressive search of Mr. Johnson's coat, ripping it in the process.

48.     The Defendants roughly removed all the contents of Mr. Johnson's pockets, including a PlayStation controller which the Defendants dropped on the hard concrete sidewalk. This damaged the controller.

49.     The Defendants continued to detain Mr. Johnson, ignoring all the signs proving his innocence.  For approximately 20 minutes, Mr. Johnson pleaded with the Defendants that he did not know Mr. T and that he was just walking to his home across the street from where they held him.  During the entire 20 minutes, the Defendants neither informed Mr. Johnson of his *Miranda* rights, nor let him call his mother, who was in the apartment across the street. The Defendants also refused to loosen the tight handcuffs.

50.     Instead, the Defendants tightened the already too tight handcuffs on Mr. Johnson's wrist and roughly placed him in the back of Defendant Flynn's cruiser.  Mr. Johnson repeatedly

complained that the handcuffs were on too tight and that he had trouble breathing from inside the cruiser.  The Defendants lowered the window, yet they refused to loosen the handcuffs.  Mr. Johnson suffered injuries to his arms from the overly tightened handcuffs.

51.    Ignoring all the information indicating that Mr. Johnson had no connection with the Hotel or any crime in Arlington, at the direction of Defendant Porciello, the supervisor on the scene, Defendant Flynn drove Mr. Johnson from Somerville to the Hotel in Arlington.

52.    At the Hotel, the officers questioned the hotel staff about Mr. Johnson while he sat handcuffed in the locked backseat of the police cruiser.  The hotel staff told the officers that they had never seen Mr. Johnson.  The officers removed Mr. Johnson from the police cruiser and stood him outside the cruiser while they scanned Mr. Johnson's fingerprints and took his picture.

53.    After finally acknowledging that they had no basis for arresting and detaining Mr. Johnson, the Defendants released Mr. Johnson at the Hotel, leaving him to find his own way home. The Defendants did not return Mr. Johnson's property at this time, but instead threatened him with charges of assault and battery of a police officer in connection with the unlawful arrest and other charges in connection with the unlawful search of his property.  His entire detention lasted approximately 45 minutes.

**Defendant Conroy Fabricated a Theory of Mr. Johnson's Criminality**

54.    Determined to justify his unlawful arrest and search of Mr. Johnson, approximately six days after the unlawful arrest, Defendant Conroy prepared a police report stating that a connection between Mr. Johnson and Mr. T existed on the CopLink database, a tool that integrates various law enforcement databases.  Defendant Conroy also falsified a theory that Mr. Johnson was a bigger threat than Mr. T based on subsequently found social media images that allegedly showed Mr. Johnson holding a handgun.

55.    However, there was no connection between Mr. Johnson and Mr. T on the CopLink database. Similarly, the social media image identified by Defendant Conroy in the police report was not of Mr. Johnson, but of a different Black man.

**APD Officers Failed to Follow Several APD Policies Resulting in Bias-Based Policing.**

56.    In March 2021, the APD conducted an independent investigation of the unlawful arrest of Mr. Johnson, which resulted in an Independent Administrative Review. The investigation concluded that the officers involved failed to follow several APD policies and procedures, and recommended specific retraining.

57.    Specifically, the report found that Defendants Conroy, Porciello, and Flynn failed to follow APD policy and the Middlesex Chiefs of Police Association, Interagency Mutual Aid Agreement with respect to investigating a potential crime or conducting an arrest outside the Town of Arlington.

58.    Defendants Conroy and Flynn also deviated from APD's Prisoner Transportation – Handcuffing policy by failing to double-lock Mr. Johnson's handcuffs, a measure intended to prevent excessive tightening and injury.

59.    Defendants Conroy and Flynn also failed to follow APD procedures with respect to the proper seizure and handling of evidence in that only relevant items for alleged criminal charges should be taken, and all items should be returned and be in similar condition.

60.    Defendant Town of Arlington acted with deliberate indifference to the rights of Mr. Johnson, including by failing to adequately train APD officers.

61.    Defendant Town of Arlington failed to train Defendants Conroy, Flynn, and Porciello to follow several APD policies and procedures, including those noted above.

62.     Defendant Town of Arlington also failed to train Defendants Conroy, Flynn, and Porciello on the law of extraterritorial stops, searches, seizures, and equal protection, causing the Defendant officers to violate Mr. Johnson's rights.

**Mr. Johnson Continues to Experience Harm as a Result of Defendant's Actions.**

63.     The unlawful arrest and search of Mr. Johnson left him traumatized and injured. The Defendants threatened Mr. Johnson's safety and well-being just steps away from his home. Mr. Johnson suffered this humiliation and pain in front of his neighbors.

64.     The harm continues.  Despite living in Somerville, Mr. Johnson fears being once again racially profiled by APD officers crossing jurisdictional lines or when Mr. Johnson happens to find himself in the Town of Arlington.  Mr. Johnson continues to struggle with shame and fear from the Defendants' actions.

## CAUSES OF ACTION

### First Cause of Action
### (42 U.S.C. § 1983, Violation of Fourth and Fourteenth Amendments: Unlawful Seizure)
### (Defendants Conroy and Flynn)

65.     The foregoing allegations are realleged and incorporated herein by reference.

66.     The Fourth and Fourteenth Amendments of the United States Constitution protect individuals against unreasonable search and seizure.

67.     At all relevant times, Defendants Conroy and Flynn were employed by the Town of Arlington and acted under the color of state law.

68.     Defendants Conroy and Flynn seized Mr. Johnson by verbally ordering him to stop, forcing him to stop through the use of a weapon, physically seizing him and placing him in handcuffs, and transporting him to a secondary location.  The Defendants did not have reasonable suspicion nor probable cause to seize Mr. Johnson at any of these points.

69.     By seizing Mr. Johnson without just cause, Defendants deprived Mr. Johnson of his rights under the Fourth and Fourteenth Amendments to be free from illegal seizure.

70.     As a direct and proximate cause of his actions, Defendants Conroy and Flynn deprived Mr. Johnson of his Fourth and Fourteenth Amendment rights, in violation of 42 U.S.C. § 1983.

**Second Cause of Action**
**(Violation of Massachusetts Civil Rights Act: Unlawful Seizure)**
**(Defendants Conroy and Flynn)**

71.     The foregoing allegations are realleged and incorporated herein by reference.

72.     Article XIV of the Massachusetts Declaration of Rights protects individuals against unreasonable search and seizure.

73.     At all relevant times, Defendants Conroy and Flynn were employed by the Town of Arlington and acted under the color of state law.

74.     Defendants Conroy and Flynn seized Mr. Johnson through the use of threats, intimidation, and coercion when they ordered him to stop, forced him to stop through the use of a weapon, physically seizing him and placing him in handcuffs, and transporting him to a secondary location.  The Defendants did not have reasonable suspicion nor probable cause to seize Mr. Johnson at any of these points.

75.     As a direct and proximate cause of his actions, Defendants deprived Mr. Johnson of his rights under Article XIV of the Massachusetts Declaration of Rights and used threats, coercion, or intimidation to do so in violation of the Massachusetts Civil Rights Act.

**Third Cause of Action**
**(42 U.S.C. § 1983, Violation of Fourth and Fourteenth Amendments: Excessive Force)**
**(Defendants Conroy and Flynn)**

76.     The foregoing allegations are realleged and incorporated herein by reference.

77.     At all relevant times, Defendants Conroy and Flynn were employed by the Town of Arlington and acted under the color of state law.

78.     In detaining Mr. Johnson, Defendants used excessive and unreasonable force against him.

79.     Through their actions, Defendants Conroy and Flynn deprived Mr. Johnson of his rights under the Fourth and Fourteenth Amendments to be free from excessive and unreasonable force.

80.     Due to the unreasonable and excessive force, Mr. Johnson suffered physical and emotional damage for which he has required medical treatment, as well as property damage.

81.     As a direct and proximate cause of his actions, Defendants Conroy and Flynn deprived Mr. Johnson of his Fourth and Fourteenth Amendment rights, in violation of 42 U.S.C. § 1983.

**Fourth Cause of Action**
**(Violation of Massachusetts Civil Rights Act: Excessive Force)**
**(Defendants Conroy and Flynn)**

82.     The foregoing allegations are realleged and incorporated herein by reference.

83.     Through their actions, Defendants Conroy and Flynn deprived Mr. Johnson of his rights under the Article XIV of the Massachusetts Declaration of Rights be free from excessive and unreasonable force. Defendants used threats, coercion, or force to accomplish this deprivation.

84.     Due to the unreasonable and excessive force used by Defendants, Mr. Johnson suffered physical and emotional damage for which he has required medical treatment, as well as property damage.

85.     By the acts and omissions described above, Defendants Conroy and Flynn deprived Mr. Johnson of his right to be free of unreasonable seizure as guaranteed under article XIV of the Massachusetts Declaration of Rights in violation of the Massachusetts Civil Rights Act.

**Fifth Cause of Action**
**(42 U.S.C. § 1983, Violation of Fourth and Fourteenth Amendments: Unreasonable Search)**
**(Defendants Conroy and Flynn)**

86.     The foregoing allegations are realleged and incorporated herein by reference.

87.     At all relevant times, Defendants Conroy and Flynn were employed by the Town of Arlington and acted under the color of law.

88.     Defendants Conroy and Flynn deprived Mr. Johnson of his right to be free from illegal search by searching his person without probable cause of criminality, reasonable suspicion that he was armed and dangerous, and not incident to a lawful arrest.

89.     Defendants Conroy and Flynn deprived Mr. Johnson of his right to be free from illegal search by physically searching and intruding on his person, including conducting a pat down search of his outer clothing, reaching into outer and inner pockets of his clothing, and physically intruding into his mouth.

90.     As a direct and proximate cause of such acts, Defendants Conroy and Flynn deprived Mr. Johnson of his Fourth and Fourteenth Amendment rights, in violation of 42 U.S.C. § 1983.

**Sixth Cause of Action**
**(Violation of Massachusetts Civil Rights Act: Unreasonable Search)**
**(Defendants Conroy and Flynn)**

91.     The foregoing allegations are realleged and incorporated herein by reference.

92.     Defendants Conroy and Flynn intimidated, threatened or coerced Mr. Johnson to deprive him of his right to be free from illegal search by searching his person without probable

15

cause of criminality, reasonable suspicion that he was armed and dangerous, and not incident to lawful arrest.

93.     Defendants Conroy and Flynn intimidated, threatened, or coerced Mr. Johnson to undergo a search of his person, including a pat down search of his outer clothing, reaching into outer and inner pockets of his clothing, and physically intruding into his mouth.

94.     By the acts and omissions described above, Defendants Conroy and Flynn deprived Mr. Johnson of his right to be free of unreasonable search as guaranteed under Article XIV of the Massachusetts Declaration of Rights in violation of the Massachusetts Civil Rights Act.

**Seventh Cause of Action**
**(Violation of Fourteenth Amendment: Equal Protection, 42 U.S.C. § 1983)**
**(Defendants Conroy and Flynn)**

95.     The foregoing allegations are realleged and incorporated herein by reference.

96.     At all relevant times, Defendants Conroy and Flynn were employed by the Town of Arlington and acted under color of law.

97.     Defendants Conroy and Flynn detained, falsely arrested, and unjustly subjected Mr. Johnson to treatment described above because of his race.

98.     Mr. Johnson, a bystander, was treated differently from, and worse than, the white suspect who was actually being pursued. Defendants Conroy and Flynn acted intentionally in their discriminatory treatment of Mr. Johnson.

99.     As a direct and proximate cause of his acts, Defendants Conroy and Flynn violated 42 U.S.C. § 1983 by violating Mr. Johnson's Fourteenth Amendment right to equal protection under the laws.

**Eighth Cause of Action**
**(Violation of Massachusetts Civil Rights Act: Equal Protection of Laws)**
**(Defendants Conroy and Flynn)**

100.     The foregoing allegations are realleged and incorporated herein by reference.

101.     Defendants Conroy and Flynn falsely arrested, and unjustly subjected Mr. Johnson to treatment described above because of his race.

102.     Mr. Johnson, a bystander, was treated differently from, and worse than, the white suspect who was actually being pursued. Defendants Conroy and Flynn acted intentionally in their discriminatory treatment of Mr. Johnson.

103.     Defendants used threats, intimidation, or coercion in order to deprive Mr. Johnson of his right to equal protection under the laws.

104.     By the acts and omissions described above, Defendants Conroy and Flynn violated Mr. Johnson's right to equal protection guaranteed by Article X of the Massachusetts Declaration of Rights. In doing so, Defendants Conroy and Flynn violated the Massachusetts Civil Rights Act.

**Ninth Cause of Action**
**(Assault and Battery)**
**(Defendants Conroy and Flynn)**

105.     The foregoing allegations are realleged and incorporated herein by reference.

106.     By using excessive and unjustified force against Mr. Johnson, Defendants Conroy and Flynn intentionally and without justification or excuse caused Mr. Johnson to suffer physical injuries.

107.     As a result of Defendants Conroy and Flynn unjustified physical battery of Mr. Johnson, he suffered damages.

**Tenth Cause of Action**
**(Violation of 42 U.S.C. § 1983: Supervisory Liability)**
**(Defendant Porciello)**

108.   The foregoing allegations are realleged and reincorporated herein by reference.

109.   By unlawfully seizing Mr. Johnson, using excessive force against Mr. Johnson, committing equal protection violations against Mr. Johnson, and engaging in biased policing, Defendants Conroy, Flynn, and Porciello violated Mr. Johnson's constitutional rights.

110.   At all relevant times, Defendant Porciello, as a Sergeant at APD, supervised Defendants Conroy, Defendant Flynn, and Officer Kelly.

111.   Without a lawful reason, Defendant Porciello directed Defendant Flynn to drive Mr. Johnson from Somerville to Arlington where they continued to detain and question him.

112.   Defendant Porciello's deliberate indifference to provide adequate supervision of his subordinates was a direct and proximate cause of the violation of Mr. Johnson's rights.

113.   As a result of Defendant Porciello's deliberate indifference, Mr. Johnson suffered damages.

**Eleventh Cause of Action**
**(Violation of 42 U.S.C. § 1983: Municipal Liability)**
**(Defendant APD)**

114.   The foregoing allegations are realleged and reincorporated herein by reference.

115.   At all relevant times, Defendants Conroy, Flynn, and Porciello and Officer Kelly served as employees of Defendant Town of Arlington, and they acted in accordance with a policy or custom of Defendant Town of Arlington.

116.   Despite the need for adequate training for police officers in identifying suspects, interacting with non-suspects, handcuffing, search and transportation procedures, Defendant Town

of Arlington has maintained, and continues to maintain, a policy of providing inadequate training for police officers.

117.    At all relevant times, Defendant Town of Arlington knew or should have known that there was a need for such training.

118.    The training currently provided by Defendant Town of Arlington is inadequate and discriminatory because it results in bias-based policing, civil rights violations, excessive use of force, and reckless publication of defamatory statements.

119.    Defendant Town of Arlington's policy of providing inadequate and discriminatory training for police officers proximately caused the harms to Mr. Johnson in violation of 42 U.S.C. § 1983.

**WHEREFORE**, Mr. Johnson respectfully requests that this Court:

a.    Award compensatory damages against all Defendants;

b.    Award punitive damages against Defendants Conroy and Flynn;

c.    Award injunctive and declaratory relief against Defendant Town of Arlington, including but not limited to ordering enhanced and ongoing training of all APD officers on implicit bias, when escalation is appropriate, interactions with bystanders and non-suspects, refresher on ADP policies, legal restrictions on searches, seizures, and detentions, and implementation of other investigative best practices;

d.    Award the cost of this action, including reasonable attorney's fees; and

**e.**    Award such other relief as this Court may deem necessary and appropriate.

## JURY DEMAND

Mr. Johnson demands a jury trial on all counts so triable.

Dated: August 3, 2022

Respectfully submitted,

DONOVAN JOHNSON

By his attorneys,

*/s/ Stephen P. Hall*

Stephen P. Hall (BBO # 679583)

ORRICK, HERRINGTON & SUTCLIFFE LLP

222 Berkeley Street, Suite 2000

Boston, MA 02116

(617) 880-1800

stephen.hall@orrick.com

Sophia Hall (BBO #684541)

LAWYERS FOR CIVIL RIGHTS

61 Batterymarch Street, Fifth Floor

Boston, MA 02110

shall@lawyersforcivilrights.org

Mirian Albert (BBO #710093)

LAWYERS FOR CIVIL RIGHTS

61 Batterymarch Street, Fifth Floor

Boston, MA 02110

malbert@lawyersforcivilrights.org